**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA KISTNER, | ) | CASE NO. 1:17-cv-01914 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Andrea Kistner (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (R. 10 & 12). For the reasons set forth below, the Commissioner's final decision is VACATED and REMANDED for proceedings consistent with this opinion.

**I. Procedural History**

On May 16, 2012, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of August 5, 2007. (Transcript ("Tr.") 290-302). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ"). (Tr. 117-162, 203-218). Plaintiff received a first hearing on July 2, 2014, resulting in an adverse decision. (Tr. 163-182). The Appeals Council ordered a new hearing, which was held on June 14, 2018. (Tr. 51-75). Plaintiff participated in the hearing, was represented by counsel, and testified. *Id*. A vocational expert ("VE") also participated and testified. *Id*. On August 3, 2016, the ALJ found Plaintiff not disabled. (Tr. 20). On August 18, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5). On September 12, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14 & 15).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by violating the treating physician rule, and (2) the ALJ erred by assigning the claimant a residual functional capacity that is not supported by the medical opinion of any treating or consulting physician. (R. 14).

## II. Evidence

### A. Relevant Evidence[1]

#### 1. Treatment Records

On June 3, 2011, Plaintiff was seen by Ashok Ramadugu, M.D. She had a history of chronic obstructive pulmonary disorder (COPD) and chronic back pain. She had a 20-year history of smoking. (Tr. 406).

On March 14, 2013, Plaintiff underwent a pulmonary function study. Khalid Darr, M.D.,

---

[1] The recitation of the evidence is not intended to be exhaustive. Because the issue of the weight assigned to Plaintiff's treating sources is dispositive, the recitation of the medical evidence and hearing testimony is limited.

2

interpreted the study and concluded Plaintiff had mild COPD. (Tr. 503).

On March 20, 2013, Plaintiff was seen at the Pain Relief Center by Ronald B. Casselberry, M.D., and her pain was rated as 7 of 10 and described as a toothache. Her chief complaints were right shoulder pain and bilateral pain in her hips and knees. She was prescribed Oxycodone. She stated her medication was effective. (Tr. 506). Treatment notes from April and May of 2013 were largely unchanged. (Tr. 504-505).

On October 14, 2014, another pulmonary function test was interpreted by Dr. Ramadugu as revealing moderately sever airflow obstruction, but with excellent response to bronchodilator. (Tr. 572).

On May 13, 2016, Plaintiff was seen by Dr. Casselberry, and her pain was rated as 5 of 10. It was noted that her function/activity was good with medication, as were her activities of daily living. (Tr. 621).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On October 17, 2014, Dr. Casselberry completed a Medical Source Statement regarding Plaintiff's physical capacity. (Tr. 525-526). Dr. Casselberry stated that Plaintiff could lift objects weighing up to 10 pounds occasionally and lift objects weighing up to 5 pounds frequently, as well as stand/walk for four hours in an eight-hour workday in one hour increments. (Tr. 525). Dr. Casselberry indicated that Plaintiff had no sitting limitations, and could rarely perform postural activities. *Id*. All of the above limitations were attributed to right sciatica, decreased range of motion of the back, and degenerative disc disease. *Id*. He opined that Plaintiff could frequently perform gross and fine manipulation, but only occasionally reach and push/pull. (Tr. 526). No explanation was given for these limitations. *Id*. Dr. Casselberry stated that environmental limitations are affected due to Plaintiff's risk of losing balance, cold aggravating her pain, and a

history of COPD. (Tr. 526). He further indicated that Plaintiff had not been prescribed any device to assist with walking or breathing, but that Plaintiff required a sit/stand/walk at will option. *Id*. Dr. Casselberry rated Plaintiff's pain as moderate, which would result in interference with concentration, take her off task, and cause absenteeism. (Tr. 526). Finally, Dr. Casselberry indicated that Plaintiff required four additional fifteen minute breaks per day. *Id*.

On October 23, 2014, Ashok Ramadugu, M.D., wrote a one sentence letter stating in its entirety that "[Plaintiff] is unable to work due to her severe COPD." (Tr. 528).

On June 10, 2016, Dr. Casselberry completed a second and nearly identical Medical Source Statement regarding Plaintiff's physical capacity. (Tr. 611-612). Dr. Casselberry again stated that Plaintiff could lift objects weighing up to 10 pounds occasionally and lift objects weighing up to 5 pounds frequently, as well as stand/walk for four hours in an eight-hour workday in one hour increments. (Tr. 611). Dr. Casselberry indicated that Plaintiff had no sitting limitations, and could rarely perform postural activities. *Id*. All of the above limitations were attributed to right sciatica, decreased range of motion of the back, and degenerative disc disease. *Id*. He again opined that Plaintiff could frequently perform gross and fine manipulation, but only occasionally reach and push/pull. (Tr. 612). No explanation was given for these limitations. *Id*. Dr. Casselberry stated that environmental limitations are affected due to Plaintiff's risk of losing balance, cold aggravating her pain, and a history of COPD. (Tr. 612). He further indicated that Plaintiff had not been prescribed any device to assist with walking or breathing, but that Plaintiff required a sit/stand/walk at will option. *Id*. Dr. Casselberry again rated Plaintiff's pain as moderate, which would result in interference with concentration, take her off task, and cause absenteeism. (Tr. 612). Finally, Dr. Casselberry indicated that Plaintiff required additional, unscheduled breaks beyond those normally allowed, but did not specify the length or frequency

4

of these breaks. *Id*.

### 3. Relevant Hearing Testimony

At the June 14, 2016 hearing, Plaintiff testified as follows:

- She has been using oxygen 24 hours a day since March or April of 2010. (Tr. 58). She quit smoking in 2007. (Tr. 59). She experiences shortness of breath with minimal activity, such as showering, walking to the bathroom, or microwaving meals. (Tr. 60-61). She uses a nebulizer four times a day in addition to using oxygen. (Tr. 66).

- She can walk 5 to 10 minutes before needing oxygen. She can stand for about 15 minutes before needing oxygen. (Tr. 62).

- She can sit for about thirty minutes before needing to stand or move around due to her sciatica. (Tr. 62-63).

- She said her back has been "pretty good" with medication, but she needed to talk to her pain doctor due to a burning sensation in her lower back with prolonged sitting or standing. (Tr. 63).

- Her medications include Oxycodone for pain and Zanaflex, a muscle relaxer. She had no side effects from these medications. (Tr. 64).

- She sees Dr. Casselberry once a month, and began seeing him in 2009. (Tr. 64).

- She does not cook, clean or do laundry, and has her aunt help her with those chores. (Tr. 65).

- She is 5'2" tall and weighs 242 pounds, gaining 40 pounds in less than a year. (Tr. 67).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 and 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§

404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since December 18, 2010, the earliest onset date available to the claimant (20

CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), obesity, low back pain (LBP), anxiety disorder, depressive disorder, and alcohol abuse in sustained full remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she can frequently climb ramps/stairs. She can never climb ladder/ropes/scaffolds. She must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. The claimant is able to understand, remember, and carry out short and simple instructions. She is able to maintain attention/concentration for extended periods on simple tasks. The claimant is able to occasionally interact and/or have superficial contact with the general public and occasional contact with co-workers and supervisors. The claimant would require continuous oxygen.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1972 and was 38 years old, which is defined as a younger individual age 18-49, on the earliest onset date available to her (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-19).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error- Treating Physician Rule

In the first assignment of error, Plaintiff asserts that the ALJ erred by violating the treating physician rule with respect to the weight assigned to the opinions from Drs. Casselberry and

8

Ramadugu. (R. 14, PageID# 702-708). The Commissioner does not directly challenge the assertion that either Dr. Casselberry or Dr. Ramadugu were treating sources at the time they rendered their respective opinions. (R. 151, PageID# 725-731). The Commissioner does, however, argue that the ALJ reasonably and properly weighed the opinions in question. *Id*.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures

that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ's decision provides little discussion of Dr. Casselberry's actual treatment of Plaintiff, but the doctor's opinions were addressed as follows:

> The claimant's pain management specialist is Dr. Casselberry. At Exhibits B11F and B18F, he opines the claimant is limited to significantly less than sedentary work and is at danger of losing her balance. The undersigned finds these opinions are inconsistent with the other substantial evidence of record. Therefore, they are not entitled to controlling weight (SSR 96-2p). Specifically, Dr. Casselberry has treated the claimant's pain with medications. On May 13, 2016, Dr. Casselberry reported the claimant's function/activity are "good with medications" and that her

> activities of daily living are "good with medications" (Ex. B19F page 7). At the
> hearing, she testified she has no adverse side effects from her medications. The
> claimant is neurologically intact and requires no assistive devices for ambulation
> (Exs. B4F page 3, Ex. B5F page 18, and Ex. B8F).

(Tr. 17-18).

Although the ALJ is under no obligation to accept the limitations assessed by Dr. Casselberry, the ALJ's decisions must set forth good reasons for rejecting those opinions. By finding Plaintiff was capable of light work, the ALJ plainly rejected Dr. Casselberry's opinion that she could only lift 10 pounds occasionally and 5 pounds frequently, as well the limitation to only standing/walking for four hours in an eight-hour workday.[2] The ALJ's characterization of the opinion as "inconsistent with the other substantial evidence of record" is a mere conclusion rather than an explanation that, on its own, fails to satisfy the treating physician rule.

The ALJ essentially gave the following reasons for rejecting Dr. Casselberry's assessed physical limitations. First, the ALJ noted Plaintiff was treated with medications. It is unclear whether this is merely an observation, or a basis for rejecting Dr. Casselberry's opinion (*i.e.* a finding that Plaintiff received only conservative treatment). If it is the former, it is insufficient on its own to reject Dr. Casselberry's opinion. If it is the latter, the ALJ fails to discuss any evidence of record suggesting other treatment options were available or why treating pain with medication rendered Dr. Casselberry's opinion inconsistent with the evidence of record.

---

[2] "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs…. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (S.S.A. 1983).

The ALJ also identifies a single treatment note from May of 2016 indicating that Plaintiff's function/activity was "good with medication," as were her activities of daily living. (Tr. 17, *citing* Tr. 621, Exh. B19F at 7). *See, e.g., Mathias v. Berryhill*, 2017 U.S. Dist. LEXIS 140956, *1 (N.D. Ohio Aug. 31, 2017) (Limbert, M.J.) (finding the ALJ's "reliance on a sole instance of hospitalization is questionable as there is no further explanation provided in the decision as to why this fact conflicts with [a treating source's] opinion). The court finds that identifying a singular alleged inconsistency fails to constitute a "good reason." The ALJ's scant discussion of the medical treatment records compounds this problem. Moreover, assuming *arguendo* that the record is replete with such findings, it is not altogether clear that such a finding was inconsistent with Dr. Casselberry's assessed limitations. The statements that Plaintiff's function/activity and activities of daily living ("ADLs") were "good" with medication are entirely unexplained, and therefore, it is conjecture that these statements conflict with Dr. Casselberry's assessed limitations. Based on her testimony, Plaintiff did not perform even the most minimal household chores, and it is unclear how ADLs such as dressing or bathing would be inconsistent with an inability, for example, to stand no more than four hours in an 8-hour workday.[3] The same treatment note also indicated that Plaintiff's pain remained 5 of 10 despite the effectiveness of her pain medication. While the ALJ is correct that "a treating source's medical opinion on what an individual can still do despite his or her impairment (s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are

---

[3] The court does not imply that the ALJ was required to treat Plaintiff's testimony as credible or as supported by the evidence. However, the ALJ basically nullified a treating source's opinion based on the premise that Plaintiff's activities of daily living were "good with medications" without any discussion or analysis as to what constituted Plaintiff's ADLs.

greater than those provided in the treating source's opinion," SSR 96-2p, 1996 WL 374188, *4 (S.S.A. July 2, 1996),[4] the ALJ's decision makes no attempt to identify Plaintiff's ADLs or explain how those activities were greater than the limitations assessed by Dr. Casselberry. The ALJ's observation, that Plaintiff reported no adverse side effects from her medications, is irrelevant if the medications did not restore her ability to engage in activity greater than those assessed by Dr. Casselberry.

Finally, the ALJ's statements that Plaintiff is neurologically intact and did not have an assistive device strays into the prohibited territory of making medical judgments. Without making a medical judgment, it is not at all clear, for example, that an obese individual with COPD and low back pain could not be both limited to four hours of standing/walking and yet not need an assistive device or have neurological deficits.

Courts routinely find that perfunctory assessments of treating source opinions do not constitute "good reasons" for their rejection. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely concluded, without explanation, that the evidence of record did not support the severity of the assessed limitations); *Patterson v. Astrue*, 2010 WL 2232309 at *14 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance.") (Vecchiarelli, M.J.); *Fuston v. Comm'r of Soc.*

---

[4] SSR 96-2p was rescinded "effective for claims filed on or after March 27, 2017." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, *1 (S.S.A. Mar. 27, 2017). The ALJ's decision however, was rendered August 3, 2016, prior to the effective date of the rescission, and the filing date was even earlier.

13

*Sec.*, No. 1:11-CV-224, 2012 WL 1413097 at *9 (S.D. Ohio Apr. 23, 2012), *report and recommendation adopted*, 2012 WL 1831578 (S.D. Ohio May 18, 2012) ("To facilitate meaningful judicial review the ALJ must state the evidence considered which supports his conclusion.")

Because the court concludes that the ALJ failed to give good reasons for rejecting the opinions of a treating source, Dr. Casselberry, this matter is remanded for a new decision that comports with the requirements of the treating physician rule. In the interests of judicial economy, the court foregoes addressing Plaintiffs' remaining assignments of error.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is VACATED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 28, 2018